**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
───────────────────────────────────────────────

**JOHN SOLAK, individually and on behalf of**
**all others similarly situated,**

                                        **Plaintiff,**

        **v.**                                                    **3:22-cv-813**

**TARGET CORPORATION,**

                                        **Defendant.**
───────────────────────────────────────────────

**THOMAS J. McAVOY,**
**Senior United States District Judge**


### DECISION & ORDER

## I.    INTRODUCTION

Plaintiff John Solak brings this putative class action against Defendant Target

Corporation.  *See* Compl. Dkt. No. 1.  The action is brought on behalf of consumers, like

Plaintiff, who purchased Defendant's "3% hydrogen peroxide solution" under the "up &

up" brand (the "Product"). *See generally* Compl.  Defendant moves to dismiss under

Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff's claims are preempted

and he fails to plead sufficient facts to meet his pleading burden. *See* Dkt. No. 15.  For

the following reasons, the Court agrees that dismissal is appropriate because Plaintiff's

claims are preempted.

## III.    BACKGROUND

Plaintiff's claims are rooted in Defendant's practice of selling 3% hydrogen

peroxide solution while representing on the Product's front label that it is a "first aid

antiseptic" to be used for "treatment of minor cuts and abrasions." Compl. ¶ 1.  Plaintiff

contends that even though consumers believe the Product would "assist in the healing

process and shorten healing time," medical studies advise that hydrogen peroxide

"does not help treat minor cuts and abrasions." *See* Compl. ¶¶ 5, 9, 16.  Plaintiff asserts

that "[w]hile hydrogen peroxide may reduce the number of bacteria at a wound, no

credible evidence supports a connection between the number of bacteria and reduction

in healing time of a clean wound." Compl. ¶ 7.  Further, Plaintiff claims, "[w]hile the back

panel Drug Facts contains the authorized statement that the Product can be 'Use[d] [as]

first aid to help prevent the risk of infection in minor cuts, scrapes and burns,' this

function is distinct from the 'treatment of minor cuts and abrasions,' which it is not

authorized to claim." Compl. ¶ 8.  Plaintiff contends that "[w]hile the bactericidal effects of

hydrogen peroxide can help clean a cut or abrasion and initially kill bacteria, its caustic

properties negatively effect [sic] healthy cells involved in wound healing." Compl. ¶ 10.

Plaintiff maintains that "[t]he representation the Product should be used 'for

treatment of minor cuts and abrasions' tells purchasers it will assist in the healing process

and shorten healing time," but "this statement is false, misleading, and not authorized by

any applicable body." Compl. ¶ 16.  Plaintiff contends that had he known that "the

Product [did not] treat minor cuts and abrasions," he "would not have bought the

Product or would have paid less for it." Compl. ¶ 21.

Plaintiff seeks damages for: (1) violations of the New York General Business Law

("GBL") §§ 349 and 350, and the consumer protection laws of Maine, Montana, Alaska,

Arkansas, Iowa, Kansas, Alabama, Utah, Indiana, and Nebraska, Compl. ¶¶ 66-75; (2)

state law breaches of express warranty, implied warranty of merchantability/fitness for a

particular purpose, and the Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. §2301,

*et seq.,*[1] Compl ¶¶ 76-91; (3) state law claims of negligent misrepresentation, Compl. ¶¶ 92-98; (4) state law claims of fraud, Compl. ¶¶ 99-102; and state law claims of unjust enrichment. Compl. ¶ 103.

The Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). *See* Compl. ¶¶ 23-29.  Venue is proper as a substantial part of the events giving rise to the claims occurred within this district. 28 U.S.C. § 1391(b). Indeed, Plaintiff alleges that he purchased the Product in Vestal, New York. Compl. ¶ 51.

## III.    STANDARD OF REVIEW

On a Fed. R. Civ. P. 12(b)(6) motion, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted).  This tenet does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements ... are not entitled to the assumption of truth." *Id.; see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(stating that a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

---

[1] "The MMWA does not create a basis for liability in addition to the plaintiff's state law claims; it provides consumers with access to federal court on breach of warranty claims and also allows them to recover attorney's fees if they prevail on those claims ...." *Hernandez v. Apple Auto Wholesalers of Waterbury LLC*, 460 F. Supp. 3d 164, 187 (D. Conn. 2020)(cleaned up).

## IV.     DISCUSSION

### Preemption

"The preemption doctrine stems from the Supremacy Clause: 'This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land.'" *Wright v. Walmart, Inc.*, 22-CV-02311-SPM, 2023 WL 5348861, at *3 (S.D. Ill. Aug. 21, 2023)(quoting U.S. Const. art. VI). The Supremacy Clause provides "'a rule of decision' for determining whether federal or state law applies in a particular situation." *Kansas v. Garcia*, —— U.S. ——, 140 S. Ct. 791, 801, 206 L.Ed.2d 146 (2020)(quoting *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 324, 135 S.Ct. 1378, 191 L.Ed.2d 471 (2015)). "In cases where federal and state law conflict, 'federal law prevails and state law is preempted.'" *Wright*, 2023 WL 5348861, at *3 (quoting *Murphy v. NCAA*, —— U.S. ——, 138 S. Ct. 1461, 1476, 200 L.Ed.2d 854 (2018)). "The federal government's advantage under the Supremacy Clause is 'an extraordinary power in a federalist system,' and it is 'a power that we must assume Congress does not exercise lightly.'" *Id.* (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 460, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991)).

"The key to the preemption inquiry is the intent of Congress. Congress may manifest its intent to preempt state or local law explicitly, through the express language of a federal statute, or implicitly, through the scope, structure, and purpose of the federal law." *New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 103 (2d Cir. 2010) (citing *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76, 129 S. Ct. 538, 172 L.Ed.2d 398 (2008)). "'[W]here ... Congress has expressly manifested its intent to preempt state law, no presumption against preemption arises.'" *Goldstein v. Walmart, Inc.*, 637 F.

4

Supp. 3d 95, 103 (S.D.N.Y. 2022), *appeal withdrawn,* 22-3052, 2023 WL 2260322 (2d

Cir. Jan. 13, 2023)(quoting *Canale v. Colgate-Palmolive Co.*, 258 F. Supp. 3d 312, 319

(S.D.N.Y. 2017)). "Rather, courts 'focus on the plain wording of the clause, which

necessarily contains the best evidence of Congress' preemptive intent.'" *Id.* (quoting

*Canale*, 258 F. Supp. 3d at 319, in turn quoting *Chamber of Commerce of the U.S. v.

Whiting*, 563 U.S. 582, 594, 131 S. Ct. 1968, 179 L.Ed.2d 1031 (2011)).

Express preemption, which Target is asserting, "occurs when a federal statute

explicitly states that it overrides a state or local law that is inconsistent with the

language of the preemption." *Wright*, 2023 WL 5348861, at *3 (citing *Aux Sable Liquid

Products v. Murphy*, 526 F.3d 1028, 1033 (7th Cir. 2008)); *see Novotney v. Walgreen

Co.*, 22 C 3439, 2023 WL 4698149, at *2 (N.D. Ill. July 20, 2023)("This case concerns

express preemption, which is when Congress 'define[s] explicitly the extent to which its

enactments pre-empt state law.'")(quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 78,

110 S. Ct. 2270, 110 L.Ed.2d 65 (1990)).

The Food, Drug, and Cosmetics Act ("FDCA") regulates the marketing and

labeling of drugs. *See* 21 U.S.C. § 301 *et seq.* The FDCA provides that no state may

"establish ... any requirement ... that is different from or in addition to, or that is

otherwise not identical with, a requirement" of the FDCA. 21 U.S.C. § 379r(a); *see

Goldstein*, 637 F. Supp. 3d at 103; *Novotney*, 2023 WL 4698149, at *2; *Wright*, 2023

WL 5348861, at *3.

> "[T]he term 'requirements' ... reaches beyond positive enactments, such as
> statutes and regulations, to embrace common-law duties." *Bates v. Dow
> Agrosciences LLC*, 544 U.S. 431, 443, 125 S. Ct. 1788, 161 L.Ed.2d 687
> (2005). "A requirement is a rule of law that must be obeyed.... The proper
> inquiry calls for an examination of the elements of the common-law duty at
> issue ...; it does not call for speculation as to whether a jury verdict will

prompt the manufacturer to take any particular action." *Id.* at 445, 125 S. Ct. 1788; *see also Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 492, 133 S. Ct. 2466, 186 L.Ed.2d 607 (2013) (same); *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 474 (S.D.N.Y. 2014) (applying *Bates* in terms of the term "requirement" in the FDCA's preemption provision for cosmetics). A common law rule that "requires that manufacturers label or package their products in [a] particular way" qualifies as a requirement with respect to labeling. *Bates*, 544 U.S. at 444, 125 S.Ct. 1788.

*Goldstein*, 637 F. Supp. 3d at 103.

Any state-law claim that would impose labeling requirements different from or in addition to those imposed by federal law is expressly preempted. *See Critcher v. L'Oreal USA, Inc.*, 959 F.3d 33, 34–38 (2d Cir. 2020) (applying 21 U.S.C. § 379s). "States can impose requirements that are identical to those imposed by the FDCA, but not different from or more burdensome than those requirements." *Wright*, 2023 WL 5348861, at *4 (citing 21 U.S.C. § 343-1(a)(1); *Chi. Faucet Shoppe, Inc. v. Nestle Waters N. Am., Inc.*, 24 F. Supp. 3d 750, 758 (N.D. Ill. 2014)). "Thus, to avoid preemption, a state law claim related to misleading labeling must allege a violation of the FDCA." *Id.* (citing *Turek v. Gen. Mills, Inc.*, 754 F. Supp. 2d 956, 958 (N.D. Ill. 2010) (quoting *Cipollone v. Liggett Grp. Inc.*, 505 U.S. 504, 521, 112 S. Ct. 2608, 120 L.Ed.2d 407 (1992)), *aff'd*, 662 F.3d 423 (7th Cir. 2011)).

"The Secretary of Health and Human Services has 'authority to promulgate regulations for the efficient enforcement' of the FDCA, 21 U.S.C.A. § 371(a), which he accomplishes through the Food and Drug Administration ("FDA") and its Commissioner, 21 U.S.C. § 393(a), (b), (d)(2)." *Novotney*, 2023 WL 4698149, at *2.  "Drug manufacturers must apply to the FDA for approval before marketing their products, so that the FDA may determine whether the drugs are safe and effective for use as

6

labeled." *Id.* (citing 21 U.S.C. §§ 355(a), (b), (j); *Wyeth v. Levine*, 555 U.S. 555, 566, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009); *see Wright*, 2023 WL 5348861, at *4.

The FDA regulates over-the-counter ("OTC") drugs via its "Over the Counter Drug Review" process, which the Second Circuit has described as follows:

> Commenced in 1972, the OTC Drug Review established FDA's "monograph" system for regulating over-the-counter drugs. *See* 21 C.F.R. § 330.10; 37 Fed. Reg. 9464 (May 11, 1972). While FDA must [typically] approve drugs as [generally recognized as safe and effective ("GRAS/E")] individually, the monograph system allows manufacturers to bypass individualized review. *See* 21 U.S.C. § 355; 21 C.F.R. § 330.10. Under this system, FDA issues a detailed regulation—a "monograph"—for each therapeutic class of OTC drug products. Like a recipe, each monograph sets out the FDA-approved active ingredients for a given therapeutic class of OTC drugs and provides the conditions under which each active ingredient is GRAS/E.

*Nat. Res. Def. Council, Inc. v. U.S. FDA*, 710 F.3d 71, 75 (2d Cir. 2013).

"The FDA regulates 3% hydrogen peroxide solution for antiseptic use under a 1991 'tentative final monograph.'" *Novotney*, 2023 WL 4698149, at *3 (citing *Topical Antimicrobial Drug Products for Over-the-Counter Human Use; Tentative Final Monograph for First Aid Antiseptic Drug Products*, 56 Fed. Reg. 33644 (July 22, 1991) ("1991 TFM"); 21 C.F.R. § 330.10(a)(7)(i) ("After reviewing all comments, reply comments, and any new data and information or, alternatively, after reviewing a panel's recommendations, the Commissioner shall publish in the Federal Register a tentative order containing a monograph establishing conditions under which a category of OTC drugs or specific OTC drugs are generally recognized as safe and effective and not misbranded.")). "The 1991 TFM became final under the Coronavirus Aid, Relief and Economic Security Act in 2020." *Id.* (citing 21 U.S.C. § 355h(b)(8)(A)). This monograph states in pertinent part:

The submission forwarded by the manufacturer (Ref. 3) included labeling for a currently marketed product containing hydrogen peroxide solution U.S.P. 3 percent, which states: "First aid antiseptic" "For treatment of minor cuts and abrasions." The submission also included safety and effectiveness data from published articles and unpublished studies. These data indicate that hydrogen peroxide inhibits S. aureus, Salmonella typhosa, Escherichia coli (E. coli), Proteus vulgaris, Klebsiella pneumoniae, Streptococcus hemolyticus, and P. aeruqinosa. The manufacturer also provided in vitro data to show that 3 percent hydrogen peroxide reduced the number of S. aureus ATCC 6538P by 3 logs (3 log10) within 5 minutes and completely inhibited all bacteria within 10 minutes.

In a separate OTC drug rulemaking, for OTC oral mucosal injury drug products, the agency found hydrogen peroxide (3 percent in aqueous solution) safe for short-term use up to 7 days. (See the Federal Register of July 26, 1983, 48 FR 33984 at 33993.)

Hydrogen peroxide achieves its intended benefit in vivo by means of both a mechanical action and a measurable antibacterial action. Because hydrogen peroxide has been demonstrated to be both safe and effective for use in minor wounds, the agency is proposing to classify hydrogen peroxide (3 percent in aqueous solution) as Category I for use as a first aid antiseptic drug product.

1991 TFM, 56 Fed. Reg. at 33659. "Furthermore, as recently as May 2, 2023, the FDA posted its Final Administrative Order dealing with Hydrogen Peroxide as an Over-the-Counter Monograph M003, finding it 'GRAS/E', which stands for 'generally recognized as safe and effective.'" *Wright,* 2023 WL 5348861, at *5. As many cases have held, monograph conditions are "requirements" that have preemptive effect. *See, e.g.*, *Goldstein,* 637 F. Supp. 3d at 110-133; *Canale,* 258 F. Supp. 3d at 319; *Bimont v. Unilever U.S., Inc.*, No. 14-cv-7749, 2015 WL 5256988, at *2 (S.D.N.Y. Sept. 9, 2015).

Here, Plaintiff complains that Target cannot use the word "treatment" on the label because, he says, while hydrogen peroxide may "reduce the number of bacteria" there is no "connection between the number of bacteria and reduction in healing time. Compl.

8

¶ 7.  But, Defendant argues, removing the term "treatment" would be in direct conflict with the monograph, and that "Plaintiff's lawsuit is an attempt to impose different or additional requirements by means of state law" which "is preempted by section 379r." Def. Br. at 7, 10.  The Court agrees with Defendant.

Plaintiff's attempt "to circumvent preemption by arguing that the very claims made on the packaging, i.e. 'For Treatment of Minor Cuts & Abrasions', induced [him] to purchase the product in violation of [state law], but that is the very conduct that the FDCA regulates. Hydrogen peroxide is regulated as a topical antiseptic and it has achieved GRAS/E status when used in that [manner]; [state law] cannot impose additional requirements."  *Wright,* 2023 WL 5348861, at *5.  "Moreover, the FDA regulates the contents of labels and controls the information the labels the convey. Specifically, 'any labeling requirement that is different from or in addition to, or that is otherwise not identical with, a requirement imposed under federal law is subject to preemption.'" *Id.* (citing 21 U.S.C. § 379r(a)(2)).

Further, "Plaintiff's leap from the treatment of minor cuts and scrapes to a shortened healing time was wholly unsupported. Indeed, the back panel even specifies that the solution should be used in 'first aid to help prevent the risk of infection in minor cuts, scrapes, and burns.' The FDA has approved the solution as an antiseptic and has the authority to regulate the package labelling and marketing. Any discrepancies are *de minimis*, and as recently cited by Judge Alonso [in *Novotney*], there is no claim 'if it is clear that the label in question complies with federal standards by advertis[ing] ... accurate[ly] the uses for which the product has been approved as safe and effective.'" *Id.* (quoting *Novotney,* 2023 WL 4698149, at * 5, in turn quoting *Sapienza v. Albertson's*

*Cos., Inc.*, No. CV 22-10968-RGS, 2022 WL 17404919, at \*3 (D. Mass. Dec. 2, 2022),

and citing *Sapienza,* 2022 WL 17404919, at \*3 ("FDA preemption regulates [the

relevant] standards generally – even if the wordings slightly differ.")(citing cases)). "The

legislative history of the preemption provision at issue also supports this 'commonsense

interpretation.'" *Id.* (quoting *Novotney,* 2023 WL 4698149, at \* 5, in turn citing S. Rep.

No. 105-43, at 64 (1997)("No State or local government is permitted to impose different

or additional requirements that *relate to the subject matter* covered by the three Federal

laws as they apply to nonprescription drugs and cosmetics. These include requirements

imposed on product manufacture or composition, *labeling*, advertising, or any other form

of public notification or communication.")(emphasis added in *Novotney*)).

Plaintiff's reliance on statements in two other OTC monographs that Plaintiff

interprets as supporting his claim that hydrogen peroxide solution is not effective to treat

minor wounds, *see* Pl. Br. at 7-8, is misplaced.  The Court agrees with Judge Alonso's

analysis in *Novotney* of the same argument.

> First, in a 1977 monograph about topical antibiotics, the FDA stated that the scientific evidence then available did not "sufficiently answer the question of the role of bacteria in minor skin wounds," and there was "little evidence to support the claims that reduction of the number of bacteria in wounds will shorten dermal and epithelial healing times." *Over The Counter Drugs; Establishment of a Monograph for OTC Topical Antibiotic Products*, 42 Fed. Reg. 17642, 17648 (Apr. 1, 1977). Second, in a 1982 monograph about oral health care drug products, the FDA stated that certain antimicrobial agents, including hydrogen peroxide, were "not only ineffective but may also retard the healing of clean or infected wounds," and it was "difficult to imagine circumstances whereby hydrogen peroxide kills bacteria, but is not injurious to tissue." *Oral Health Care Drug Products for Over-the-Counter Human Use; Establishment of a Monograph*, 47 Fed. Reg. 22760, 22831, 22876 (May 25, 1982).

> In context, however, these statements are irrelevant to the use of hydrogen peroxide as a "first aid antiseptic for treatment of minor cuts and abrasions." *See* [*Abron v. Vi-Jon, LLC*, Case No. 22 C 50238, at 3-4 (N.D. Ill. Jun. 20,

2023)](rejecting a similar argument because "the cited material is inapposite"). The 1977 monograph addressed topical antibiotics, not antiseptics, and it did not mention hydrogen peroxide. The 1982 monograph addressed the effective use—or lack thereof—of hydrogen peroxide as an *oral* "antimicrobial agent," not as a topical antiseptic. *See* 42 Fed. Reg. at 22876 ("The Panel concludes that there are insufficient data available to permit final classification of the effectiveness of hydrogen peroxide as an OTC antimicrobial agent for topical use *on the mucous membranes of the mouth and throat*."); *id.* ("The Panel concludes that there are insufficient data from controlled studies to establish the effectiveness of hydrogen peroxide as an antimicrobial agent for the treatment of symptoms such as sore mouth and sore throat."). These statements simply have nothing to do with the labeling of hydrogen peroxide solution for use as a "first aid antiseptic for treatment of minor cuts and abrasions." The 1991 TFM contains the relevant statements on the relevant use of hydrogen peroxide, and those statements point in a different direction. Because the 1991 TFM provides that hydrogen peroxide is an effective first aid antiseptic for minor cuts and abrasions, and labeling hydrogen peroxide as such meets with the approval of federal law, plaintiff's claims are preempted to the extent that they depend on demonstrating that state law does *not* permit such labeling.

*Novotney*, 2023 WL 4698149, at *4 (emphases in *Novotney)*.

The Court also rejects Plaintiff's other arguments to avoid preemption.  Plaintiff argues he is not attempting to impose different or additional requirements by means of state law because the representations about the Product's efficacy were made to him, not to the FDA.  Pl. Br. at 7.  The Court agrees with Judge Alonso's analysis in *Novotney* on the same argument. "This seems to mischaracterize the federal-law requirement at issue, which is not about what the defendant or another drug manufacturer can say to the FDA about hydrogen peroxide; it is about how the product is to be labeled in relation to its intended use. The monograph provides that a 3% hydrogen peroxide solution labeled as a 'first aid antiseptic' used 'for treatment of minor cuts and abrasions' has been demonstrated to be "safe and effective for use in minor wounds ... as a first aid antiseptic.'" *Novotney*, 2023 WL 4698149, at *3. "The gravamen of plaintiff's claims is that this very labeling, which is regulated by the FDA, is misleading

because hydrogen peroxide is *not* effective as a first aid antiseptic for treatment of

minor cuts and abrasions. Because plaintiff's claims require him to establish, in

essence, that state law imposes labeling requirements on defendant that are different

from, additional to, or otherwise not identical with, requirements of federal law, his

claims are preempted." *Id.* (citing *Abron*, at 3 ("[P]laintiff is complaining about the label.

The FDA regulates the content of the label to control information that the label conveys

to consumers like plaintiff.... Plaintiff's argument is baseless.")).

 Lastly, the Court rejects Plaintiff's argument that preemption cannot apply because

the FDA did not expressly authorize use of the specific word "treat." *See* Pl. Br. at 8–9.  The

Court agrees with Judge Alonso's analysis in *Novotney* rejecting a nearly identical

argument.  *Compare* Pl. Br. at 8–9 *with Novotney*, 2023 WL 4698149, at *4.  As Judge

Alonso stated:

> The word "treatment" does not appear in this "new indication," and therefore,
> plaintiff argues, it is outside the scope of language that the FDA approved in
> connection with hydrogen peroxide. Under plaintiff's logic, then, asserting
> that the use of the word "treatment" on the product's label is misleading is not
> imposing a requirement that is different from, additional to, or otherwise not
> identical with, a requirement of the FDCA.
>
> But the Court agrees with defendant that whether the FDA specifically
> approved the use of the word "treatment" is beside the point. The content of
> the product's label as it relates to its safety or effectiveness is a matter of
> federal law, and by claiming that some other terminology is necessary to
> ensure that the label is not misleading, plaintiff impermissibly claims that
> state law imposes requirements that are different from, additional to, or
> otherwise not identical with, the requirements of the FDCA. *See Turek v.
> Gen. Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011) (explaining that similar
> claims about whether a label was misleading in stating the product's
> percentage daily value of fiber were preempted because, if successful, they
> would require the addition of "disclaimers" that were "not identical to the
> labeling requirements imposed on such products by federal law").  And a d*e
> minimis* difference between the wording of the label and wording in a
> monograph does not save the claim, if it is clear that the label in question
> complies with federal standards by "advertis[ing] ... accurate[ly]" the uses for

12

which the product has been approved as safe and effective. *See Sapienza v. Albertson's Cos., Inc.*, No. CV 22-10968-RGS, 2022 WL 17404919, at *3 (D. Mass. Dec. 2, 2022); *see also id.* at *3 ("FDA preemption regulates [the relevant] standards generally – the subject matter of [the plaintiff's] state-law claims – even if the wordings slightly differ." (citing cases)). The legislative history of the preemption provision at issue supports this "commonsense interpretation." *Id.* (citing S. Rep. No. 105-43, at 64 (1997)) ("No State or local government is permitted to impose different or additional requirements that *relate to the subject matter* covered by the three Federal laws as they apply to nonprescription drugs and cosmetics. These include requirements imposed on product manufacture or composition, *labeling*, advertising, or any other form of public notification or communication.") (emphasis added).

*Novotney*, 2023 WL 4698149, at *4-5 (footnote omitted).

## V.    CONCLUSION

For the reasons discussed above, the Court agrees with Defendant that Plaintiff's claims are preempted. The Court need not reach Defendant's arguments about whether Plaintiff has met his pleading burden by pleading sufficient factual matter to state a claim.

Accordingly, Defendant's motion to dismiss, Dkt. No. 15, is **GRANTED**.  All claims alleged in the Complaint are **DISMISSED with prejudice** inasmuch as "amendment would be futile because no amended complaint can change the fact [that] plaintiff's claim[s] [are] preempted under 21 U.S.C. § 379(a)(2)." *Novotney*, 2023 WL 4698149, at *5) (citing *Abron* at 7); *see also Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019)("Amendment is futile if it fails 'to cure prior deficiencies.'")(quoting *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)); *cf. Murphy v. City of Elmira*, 6:18-CV-06572(MAT), 2018 WL 11510652, at *5 (W.D.N.Y. Aug. 21, 2018)("The Court dismisses with prejudice the claims against the individual defendants in their official capacities with prejudice because better pleading will not cure the legal deficiencies in those claims.").

The Clerk of the Court is respectfully directed to enter judgment in Defendant's favor and close the file in this matter.

**IT IS SO ORDERED.**

Dated:  September 7, 2023

Thomas J. McAvoy
Senior, U.S. District Judge